```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA
```

THERESE L. HENNESSY,            )
                                )
            Plaintiff,          )
                                )
v.                              )  Case No. CIV-13-368-RAW-KEW
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff Therese L. Hennessy (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on September 15, 1960 and was 51 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a cashier, stocker, sandwich maker, cleaner at a gas station, tire loader, and tire curer. Claimant alleges an inability to work beginning July 12, 2008 due to limitations resulting from lower back pain

3

extending to the hips, legs, and knees and left wrist pain and weakness.

## Procedural History

On January 25, 2010, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge Larry D. Shepherd ("ALJ") on October 6, 2011 in Oklahoma City, Oklahoma. The ALJ issued an unfavorable decision on January 27, 2012. On June 26, 2013, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to properly evaluate the medical opinion evidence; (2) improperly relied upon Claimant's lack of treatment without considering her

4

ability to pay for such treatment; and (3) failed to include all of Claimant's limitations in her RFC.

**Evaluation of the Medical Opinion Evidence**

In his decision, the ALJ determined Claimant suffered from the severe impairments of obesity, osteoarthritis, and chronic pain. (Tr. 32). He concluded that Claimant retained the RFC to perform her past relevant work as a cashier I. (Tr. 41). In so doing, the ALJ found she could lift/carry 20 pounds occasionally and 10 pounds frequently, sit for 6 hours in an 8 hour workday, and stand/walk for 6 hours in an 8 hour workday. Claimant was found to only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. Claimant, however, could not climb ladders, ropes, or scaffolds. (Tr. 33). Alternatively, after consultation with avocational expert, the ALJ found Claimant could perform the representative jobs of addresser, bench table gold finisher, and surveillance system monitor, all of which exist in sufficient numbers in both the national and regional economies according to the expert. (Tr. 41). The ALJ, therefore, concluded Claimant was not disabled. Id.

Claimant contends the ALJ failed to properly evaluation and weigh the opinions of her treating physician, Dr. Richard Greisman, an orthopedist. On November 1, 2011, Dr. Greisman completed a

5

Physical Residual Functional Capacity Questionnaire.  Dr. Greisman stated Claimant suffered from osteoarthrosis in the pelvic region and thigh as well as degenerative disc disease.  He found Claimant to have bilateral groin pain, shooting pain down the left lower leg, limited mobility in Claimant's hips, a considerable limp, and difficulty walking.  (Tr. 386).  Dr. Greisman found Claimant's condition would last at least 12 months, and that the pain Claimant experienced would be constant.  Claimant's ability to deal with work stress was considered severely limited.  (Tr. 387).

In the area of functional limitations, Dr. Greisman stated Claimant could walk less than one block, could sit for 15 minutes, and could stand for 10 minutes at one time.  In total during an 8 hour workday, Dr. Greisman found Claimant could sit for about 2 hours and could stand/walk for less than 2 hours.  (Tr. 388).  Claimant would require a job that permitted shifting positions at will from sitting, standing, or walking and would need to take unscheduled breaks of 10-15 minutes during an 8 hour workday at least every 20-30 minutes.  (Tr. 388-89).

Dr. Greisman set forth that Claimant would have to elevate her legs with sitting above heart level.  With sedentary employment, Dr. Greisman opined Claimant would have to elevate her legs 20%-30% of the time during an 8 hour workday.  He also found Claimant would

6

have to use a cane or other assistive device if she were required to stand or walk. He determined Claimant could only occasionally lift/carry less than 10 pounds. Dr. Greisman stated Claimant suffered from significant limitations in doing repetitive reaching, handling, or fingering. Specifically, Claimant could grasp, turn and twist objects 50% of an 8 hour workday using the right hand and 10% on the left, fine manipulation 50% of an 8 hour workday using the right hand and 10% of the left, and reaching including overhead 50% of an 8 hour workday using the right hand and 10% using the left. She cannot bend or twist at the waist. (Tr. 389).

Dr. Greisman estimated Claimant would only experience bad days. On average, he found Claimant would be required to be absent from work for more than three times a month. In a narrative of Claimant's "other limitations", Dr. Greisman stated Claimant had severe left upper extremity weakness and pain from a previous rotator cuff tear and nerve impingement in the elbow and wrist. The condition existed greater than 10 years prior. In a written comment on the report, Dr. Greisman noted that Claimant "has severe bilateral hip osteoarthritis – severe! If you were to see her walk, not just sit in an examining room - you would immediately place her on disability." (Tr. 390).

The ALJ acknowledged Dr. Greisman's report but gave the

opinion "little weight", concluding it was not consistent with the medical evidence of record as a whole. (Tr. 38). His apparent basis for giving the opinion of a treating physician this minimal weight consists of (1) a finding Claimant had not been hospitalized; (2) a gap in care sought from Dr. Greisman between 2004 and 2011; (3) Claimant sought treatment after a motorcycle accident - activity "not indicative of a disabled individual"; and (4) the pain level reported to a chiropractor. (Tr. 38-39). The ALJ, however, chose to minimize or ignore the clinical findings that x-rays taken in September of 2011 indicate Claimant suffered from severe end-stage osteoarthritis of the bilateral hips with bone-on-bone changes and mild to moderate back osteoarthritis. (Tr. 334). Claimant was also diagnosed with mild dextroscoliosis, and osteoarthritis changes that involved the interfacet joints at L3-4, L4-5, and L5-S1. She had prominent hypertrophic spurring throughout and disc spaces at L2, L3, and L3-4 that are narrowed due to arthritis. (Tr. 330). Claimant walked with a limp. (Tr. 331). Dr. Greisman recommended bilateral hip arthroplasty but Claimant did not have insurance and was treated with medication. (Tr. 58, 393). The consultative examiner, Dr. Dennis Whitehouse, also found Claimant had tenderness to palpation in the bilateral inguinal area and mildly decreased range of motion in the right

hip. (Tr. 310). He noted Claimant walked with a limp on the right side. (Tr. 311).

This Court concurs with Claimant that Dr. Whitehouse's in whose opinion the ALJ gave "great weight" was authored in April of 2010 - well in advance of the diagnostic testing which showed the extent of Claimant's limitations. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the

9

treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ essentially rejected Dr. Greisman's opinion without providing a supportable and adequate reason for doing so. His bases amounted to a "feeling" that Claimant was not disabled rather than substantiation through objective evidence. On remand, the ALJ shall reassess Dr. Greisman's functional assessment in light of the

10

totality of the record and the requirements of Watkins.

**Lack of Treatment as a Basis for Reduced Credibility**

Claimant also contends the ALJ improperly rejected her reports of pain and limitation based upon her failure to obtain treatment. Claimant testified at the administrative hearing that she did not have insurance and, therefore, could not afford treatment such as hip replacement surgery. (Tr. 58). It appears the ALJ did not consider indigency as a basis for Claimant not seeking the physician recommended treatment which is error. Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004). On remand, the ALJ shall take into consideration Claimant's financial condition as a reason for not obtaining treatment and reassess her credibility on pain and her functional limitations.

**RFC Evaluation**

Claimant also asserts the ALJ failed to include all of her functional restrictions in his RFC; namely, her limitations caused by her osteoarthritis. This Court has found the ALJ did not adequately consider Dr. Greisman's opinions regarding Claimant's limitations. As considering these limitations would affect Claimant's ability to engage in light work, the ALJ shall reassess his RFC findings after considering the totality of Claimant's impairments and the limitations they impose upon her ability to

11

engage in basic work activities.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of February, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE